Brody, Hervis and Ward. Mr. Brody's case is on submission. The remaining lawyers I think are here. All right, we have Mr. Jurowicz for Mr. Westley going first. May I proceed? Yes. May I please support. Westley argues that the government's statements of sentencing that he attempted premeditated murder and that therefore level 33 should be the guideline to reach the agreement. The government's position for why no breach occurred is that they were simply responding to an inquiry from the district court, which the government contends is permitted under the agreement. Here is what the agreement actually provides, and this is at page 60. In the event of probation or the court, quote, contemplates any sentence in calculation different from those stipulated by the parties, the parties may reserve the right to respond. We submit that language has no application to the circumstances here. The district court twice specifically prefaced its comments that it had no intent of departing from the stipulated guideline. But it did clearly state, I think this should be a 33. The district court said, I think this was malice of forethought and that 33 should apply. Ultimately, he did not apply it. But the inquiry was in response to the district court coming out and saying this should be a 33 because it was intentional. He tried to, you know, shoot someone in the head. Right. But at page 127 and at page 151, the court said I'm applying it at 27. That's the guideline I'm going to apply. So it's not under the provisions included in the stipulated agreement against the government. Here, the government could have used broader language, and they didn't cite it. So under your view, why isn't this – how is this plain error? It wasn't raised – you didn't say the government has breached the agreement below. So we're on a plain error review. The district court applied the lower guideline range, said – I think said it would give the same sentence regardless of the guideline range. So how is this a plain error that has substantially affected your client's rights? It's not a plain error because, one, the – there's no doubt that the district court relied on the fact that Leslie had attempted to premeditate Mortimer, and that's often the value. So it moved to the fact that the government argued as to why 33 should apply. But there was no argument to the sentencing judge that it was not premeditated. In other words, the fact of premeditation was not disputed, right? The lawyer didn't even – when the judge raised this issue, the response was we don't want to go there, Judge. We don't want to undermine our position. So there was no argument, Judge, this was not premeditated. You shouldn't have considered this as premeditated. That argument was never made. And in fact, your client stipulated to the attempted murder, which involved him shooting someone in the head. Well, I think I have to take a step back. There's a few in the union which probation applied at level 27, which means that it's not premeditated murder. Defense counsel's response that I'm not going to respond is actually for this court that said the lawyer is the correct response. Well, defense counsel actually did say Mr. Wesley always said he never intended to hurt anybody, so I'll just rest on that. He said something to that effect, right? So there was a suggestion that maybe he didn't – maybe it wasn't premeditated. He certainly didn't take the position that it was premeditated murder, and the government's response should have been we can't respond to that. We rest on the agreement that the agreement holds for level 27, and that's it. To then go and say no, no, you're right. But then can I ask, since the district court did apply at level 27, then why did this cause harm to your client? Because the government did not say – well, the government's response is correct. This is a level 33, and therefore you should take that – this is premeditated murder, and you should take that into account when you oppose the barrier. So the government is doing – basically getting this argument through the back door, and that's the problem over here. I thought the government took the position that 33 would be too high given the individual's youth and mitigating characteristics. But the issue is whether this was premeditated murder or not, and the government certainly – I thought the issue was whether the plea agreement was breached by the government. I'm sorry. I thought the issue was whether the plea agreement was breached. It is an issue of whether the plea agreement was breached because the plea agreement holds for level 27. Yeah. But level 27 is not premeditated murder. And how was the plea agreement breached? The plea agreement was breached when the government said the correct response here should be level 33. And for premeditated murder, under the circumstances, we don't support a 33. We support a 27. How is that a breach? Because if you look at what the – for example, what the Fourth Circuit said in Warner is the government can't take the position. You're right. We agree to one thing but don't apply it. If the government is taking the position, this is the correct outcome. You're right. This is a level 33. Even though we agreed to a level 47, this is a level – What's the – what would you like us to do in this case with respect to your client? To make it a sentence in defense of a different district judge. That's what this court has said when it was a breach of the plan. Do you think that will be to your client's advantage? I can believe it will. It will give him the opportunity to – yes, I believe it will. Why would we do it to a different district judge? Because I think there are a lot of mitigating circumstances here. It was a serious crime. What he's denying was a serious crime. Why would we do it to a different district judge? Normally, that's very rare that we would send it back to a different judge. Your Honor, this court has repeatedly stated that once we find a breach to the agreement, it's appropriate to demand to a different district judge. I don't. All right. Well, sir, I have a question. You don't say that it's a breach of the agreement for the government to ask for the upward variance, right? It's just a breach when they say that the proper base level is 30 – it should have been 33 instead of 27. It's not a breach to ask. I think it is a breach to ask them about the variance and say this should have been 33. Right. So it was within their right to say there's a base level of 27, but we should vary upward to 30, right? Yes. So your argument for why the breach harmed your client is that they had an extra argument for making the case for the variance that they wouldn't have had if they abided by the agreement, right? Yes. And you think it's clear that that made a difference to the district court when the district court said he was going to impose the sentence anyway? I think it's clear from the record that the district court relied on the fact that it was premeditated murder. I mean hadn't the district court already concluded that he thought it was a premeditated murder and the government's statements that, oh, yes, it seems like you're right? Would that have made a difference? I don't know if it would have made a difference. Certainly probation took this position also that it was a 27, so I don't know that it would have made a difference. Okay. Thank you. Good morning, Your Honor. May it please the Court. I'm Theodore Tosh. I represent Sandell Hurts. Mr. Curtis brings one point to this court, and that is that the sentence of 144 months was unreasonable. The plea range and the guidelines range found by the court was for 78 to 97 months. The pre-sentence report and the sentence range argued by the government was 151 to 181 months, and Mr. Curtis got 144. You're arguing that this is unreasonable both substantively as well as procedurally. In terms of its substantive unreasonableness, Mr. Curtis was sentenced as if he were a shooter when he was not. That's not what the district court said. The district court said that he supplied guns in three attempted murders. I think the district court was pretty clear and actually compared him to say you're not a shooter like Brody, I think it was. So the district court was not under the impression the client was a shooter. And said he was older than the shooters and that he had driven them around, right? So why aren't those reasons for the treatment? If I could go backwards to any questions. I'm not saying that the district court said that he was sentenced as if he was a shooter. I'm saying that the numbers that he got are consistent more with shooters than with the one he died who was not a shooter. So your position is, let's put aside the co-defense for a minute, that when someone supplies guns for three separate attempted murders, one of which there was at least one of which was a serious injury, that 12 years in jail is shockingly high? Is that what you're telling us? In this case, yes. What your Honor asked about him being older and him driving people around, he was a little bit older than the rest of the co-defendants. Nonetheless, the entire duration of this criminal activity happened in his late teens and early 20s. He was 24 when he was finally indicted. And it should be noted, he had a criminal history category of one. That's basically no criminal history before this. So my argument in terms of his substantive reasonableness is Mr. Brody was a shooter. He got 168 months. Mr. Westley was a shooter. He got 157 months. Mr. Curtis was not a shooter, although I do concede that he held the guns. That's not an issue here. But he got 144 months. Mr. Ward, who was also a shooter, got 97 months. Mr. Bell, who the government characterized as having tried to kill somebody, got 87 months. The only person in this indictment who got the sentence that Mr. Curtis asked for at the sentencing was Mr. Dia. He got 78 months. He was not involved in any shootings. So if I could turn – I didn't preserve any rebuttal because I hope I can be convincing enough on the initial presentation here. His sentence is procedurally unreasonable because the district court failed to consider 3553A2A's promotion of prospective law in litigation. And I'm arguing that mitigation – mitigation is the way that promotion of prospective law really ought to be viewed, particularly in this case. Prospective law has a connotation of if you break the law, you get punished. But that is a different part of 3553A. That's the just punishment part. There are cases – and there's not many of them. And what we would like this court to do is give us a little more guidance about what promotion of prospective law really means. In Kimbrough, the Supreme Court said the crack-to-powder disparity does not promote prospective law because people can essentially be on the same drugs and getting very disparate sentences. In Pepper, there was an individual who kept getting his appeal – So – sorry. So you're suggesting that the fact that the shooters got lesser sentences doesn't promote respect for the rule of law? Is that the argument? I'm saying that with the – well, that the comparison of Mr. Curtis' sentence to the shooter's sentence goes more towards the acceptance of reasonableness argument. Okay, so what doesn't respect – promote respect for the rule of law here? What I would like the court to talk about is the impact of these lengthy sentences upon the communities in which the sentences are dealt. Like, Mr. Curtis had guns. We gave guns to people, people did shootings. This is all on the ground. And if you lock up Mr. Curtis, you are locking up the person who held those guns, but you're also locking up the person who is a father and a son. But the district court explicitly considered the impact on the family. The district court considered that issue explicitly. So why is that a procedural problem? I think that the district court missed an opportunity to really delve into what the sentence could be. I mean, Mr. Curtis had a young son and a young daughter, and the reason why he asked for 78 months was because it would enable him to be able to see them before they were fully grown adults and help them out along their way. The district court did consider – Judge Shade listened to a victim of one of the crimes and did consider some of these things, but it's not the specific thing that I'm asking for. All right, thank you. Thank you, Your Honor. May it please the Court, my name is John Schoenhorn. I represent Judge John Board on this matter. And I'll just note, I had oral surgery on Friday, so I'm more inarticulate than usual. So far, so good. Except for the third issue dealing with Verizon, it is a pure statutory analysis of the guidelines, the interplay between 2E1.1 and 3D1.1. All of my other issues, to a certain extent, involve pure speech. Some protected by the First Amendment, some perhaps not. But in any event, it should have led the district judge to downward depart rather than upward depart 10 months beyond the highest level of the guideline of Level 27. It did so by interpreting social media posts, some going back 5, 6 years, some when my client was 14, and just stringing a bunch together, not distinguishing between what is a status post on Facebook as opposed to a text communication with another person. And for members of the Court, I'm sure their clerks may know this, a status post is sort of like a try-on on a CNN scroll. It's just something you put up there. It could be from a newspaper. It could be a picture that's been forwarded so that everyone in the world can see. It's not even a communication with someone in particular. How the Court interpreted those social media posts and claims, despite first deciding that when the agent said, this is what I think this means, this is what I think this post means, at one point the judge goes, no, I agree with Mr. Schoenhart. I don't need and want to hear what this agent from the ATRE believes these things mean. Then he himself interpreted, strung it together. So, for example, on page A454 of my appendix, there's a quote that says, we circled the block four times, but ain't no doubt. Let's see how this turned out in response by an activist, Earl Jackson, LOL, it sounds like a rock lyric, which it probably is. If, in fact, it was promotion of violence, do you disagree that the district court could impose a higher sentence because of that? Well, promotion versus celebration, I believe celebration of violence, although we may find that offensive, is protected speech. And it is protected, whether it's sung by 50 Cent, the rap singer. Wait a second. Hold on a second. So if you have a gang member on social media posts every day, I love violence. Violence is great. That a district court cannot consider those posts in connection with the sentencing and determining whether how violent someone is, how long they need to be incarcerated for. Is that your position? Because in itself, it's First Amendment to make those kinds of general claims. Well, I'm not saying they can't consider it, but I'm suggesting that the judge in this case used that and his comment that my client was a cheerleader for his gang group there to enhance the sentence beyond what the guidelines already called for for what he was convicted of. In the same way, the court interpreted the simple posting of a statement that someone who had already been published in the newspaper as having testified or cooperating. Yeah, I have a question about that. So he's he posted. Jizz is the nickname, right? He posted the guy is in New Haven after being a snitch, just kicking it like a kickstand. So for that to violate the statute, we have to determine that it's a threat, a threat of bodily harm. So I understand there's a question as to whether it was a threat. But if it, in fact, is a threat, there isn't a First Amendment problem with criminalizing threats. Right. Absolutely. Right. So the question is really whether it falls under the statute. Correct. OK. But even if it did, and I know my time is up, but may I respond to your honor? Sure. Even if it did end up constituting a true threat, it's so outside the heartland what threats are under that statute. Even if the court rejects my argument that the statute is vague, you can't refer to it in the circumstances it is. But even if it is, it should have resulted in a below guideline sentence or at least at the bottom end of the guideline. I'm a little confused because your client admitted to obstruction of justice based upon the 2015 Facebook post. There's a difference. What's the difference? In the first post, all he did was post a newspaper story from the New Haven Register, without comment, by the way, your honor. Just posted it. His friend, Ben Merlin, noted that the person who had been shot originally didn't cooperate and then cooperated. Later on, maybe 90 minutes or an hour later, after 20 people had commented, and I'll just note as an aside, the most shocking thing about that, your honor, is that teenagers still read a daily newspaper article. They post the article without comment as a status post. The fact that Mr. Harris later said, I'm not a snitch. You're a liar. I don't believe that. And I think he uses the colloquial can eat a dick or whatever he said. That's when my client says, you are a snitch. You and your mother went to court. He admitted in his plea, to get directly to your honor's question, that he posted it so he hoped that in the future, Mr. Harris wouldn't cooperate with what he thought was a federal investigation. It's something different to say you're 15-13 as opposed to 15-13. Well, the district court groups the obstruction charges, right? The district court groups the obstruction charges. So even if the later one was an error, it wouldn't have affected his sentence. Well, I disagree. Because he got an above the value line sentence, I don't disagree with that. But the district court said I would impose the same sentence even if I agreed with defense counsel. There was no substantial interference with the government investigation and no threat to cause physical injury. So isn't that a clear statement that it wouldn't have mattered to the ultimate number here? Well, it does go to the people and substance of reasonableness under the circumstances which it's issued for in my brief. All right. Thank you. Thank you. Good morning, Your Honors. My name is Jocelyn Cortez-Azanez, and I represent the United States of America on this appeal. The defendants, each of whom were members and associates of the Goodrich Street Boys, a violent street gang who may have been responsible for a number of shootings in the 2016 time period, pled guilty to arbitrary conspiracy, each one of them. The district court conducted evidentiary hearings, made detailed factual findings, grabbed from the evidence, correctly calculated, applied, and explained the sentencing guidelines, and appropriately weighted the various mitigating and aggregating factors to each one of the defendants. The sentences and judgments of the district court should be affirmed. Beginning with appellant Milton Wesley, who argued that there was a breach of the plea agreement, first, the plea agreement did explicitly allow the government to respond to inquiries from the district court, which was done here. In this manner, this case is distinguishable from United States v. Warner, which the defense counsel just referred to. In United States v. Warner, government counsel in the written plea agreement said that they would not argue for an enhancement and then did so, but said that the court should apply the— Yeah, but in this case, the government said definitively that the 33 should apply to Wesley's conduct, and it gave like an argument based on the law and based on the fact as to why it should apply. Why doesn't that make this like Lawler, where we said that when the government makes that kind of an argument, that's a breach of the plea agreement? The other case is where we said that it's not a breach. We stopped short of saying that the government actually advocated for it or made a substantive argument. But here, the government actually makes an argument. It says 33 should apply. Your Honor, I believe the government counsel's argument is best characterized as the 33 should apply, but in this case, we are not advocating that the court apply a level 33. Well, he could have just left after the first shot, but he went into it and shot him again. That should be a 33, right? That's what the government said. But then the government counsel continues and says that that's not the case. Yeah, but we have this plea agreement where we agreed to a 27. But he still is saying it should be a 33, right? So if you've agreed in the plea agreement that the appropriate base level is a 27 and then you tell the judge it should be a 33, that seems inconsistent with the government's obligations. Your Honor, I think what's important is to read the rest of that and how he goes back again and says ultimately that the parties agreed on the level 27. That's the base level that should apply. And then as Your Honor has pointed out earlier, ultimately this report applies to the level 27. Counsel, I have to tell you, apart from the issue of whether it was a breach or not, and, you know, sometimes the government makes a mistake and a court will say, well, doesn't this apply? And if it really does apply and the government missed it, their obligation is to say it applies and we missed it. My problem with this case is that AUSA's response, I know you weren't at the AUSA below, but was basically to say, yeah, we basically knew that applied, but because he's young, we left that out of the plea agreement. And that troubles me because that leads to these precise situations where the defendant is under the impression that a particular enhancement is not going to apply because it's not in the plea agreement, where it clearly applies and the government for unrelated reasons has decided not to include it. That's a terrible practice. Sometimes it's arguable whether it applies or not. The government didn't say it was arguable and we decided not to apply it. The government basically said to the judge, yeah, it clearly applies, but because he's young, we didn't think it was fair. And that's not a good way to negotiate pleas. Your Honor, I agree with your opinion. It was not said articulately. To say, Your Honor, it was written in like that, that's certainly not a practice that our office condones. But again – Instead, the 33 should be applied if it really applies. And then in the plea agreement, it said the government will not oppose a variance downward if they think because he's young that that would be too high a sentence. That's the way you do it. I agree with that. All right. But ultimately here – Yes. And so if the government comes in and says all the case law says that premeditation and that's malice, right? That should be at 33. How could that not affect the district court's decision? Well, Your Honor – You have an argument from the government that 33 is actually the appropriate level. The district court in its decision first, again, applies at level 27. And then he's explaining what's impacting this decision. He's explaining that the seriousness of the offense conduct beyond this attempted murder, Milton Westley's involvement in the aggravated assault at Brandon Shilley's house, the prior aggravated assault at Marquis Truman, his incitement of violence, that all of that violence, all of that seriousness of the offense conduct is driving his ultimate sentence, the variance of health and guidelines. And then again it says, both in court and in his written judgment, that he would have applied for the same sentence even had he not written the guidelines. With regards to Danell Purvis, I think as the questioning to defense counsel earlier pointed out, Mr. Purvis was the supplier of firearms to the group. The two firearms that he was found with were linked to approximately two dozen shootings. There were three specific shootings, one of which he admitted he supplied the firearms, specifically the attempted murder at Marquis Truman. The other two the district court found that there was evidence in the form of Facebook messages and text messages that he supplied the firearms used in those shootings. He was driving around defendants. He was inciting violence. All of that is what the district court weighed against the mitigating factors put forth by defense counsel during the sentencing and now again on appeal. The promotion of respect for the law argument, the district court explicitly considered the need to promote respect for the law, but determined in a case where you have a violent street gang that's running rampant shooting this amount of violence that the length of the sentence was needed to be longer to promote respect for the law. So I don't see any, it's difficult to understand how this is a procedural unreasonableness argument, but to the extent it's found to be substantive unreasonableness, a 144-month sentence for the conduct here was certainly not shockingly high or otherwise unreasonable. As to John Ward going to the Facebook post, which counsel raises now on appeal, I think it's important to take this case, to step back from the Facebook post, and first understand that to John Ward, all the defendants here have pled guilty. John Ward admitted that some of his Facebook posts were intended in exactly the manner that the government instructed them. So it's not as if the district court is analyzing one-off Facebook posts in the background. It's analyzing them against John Ward and the other defendants' own admissions of their plea colonies, against the testimony they had from these witnesses. Well, can I ask about the 2016 Facebook post?  To violate the statute, he has to threaten bodily harm. I mean, how is that a threat of bodily harm? Yeah, the earlier one, I understand. But the later one where he says that the guy is kicking it in New Haven. And the district court says that that's a threat of bodily harm? So it's all this context of groups repeated threatening bodily harm. But for the statement that the guy is kicking it like a kickstand to be a threat of bodily harm, then all the viewers of that statement would have to know this context of the earlier statements? Is that the argument? They know that he generally has a policy or something of going after people who are snitching, and so therefore this is a threat of bodily harm? Is that the idea? I mean, he's a member and associate of the Goodrich District Court of Amnesty. It's a gang that advertises that they go after people. So then do you agree that just in itself the statement does not threaten bodily harm against anybody? Your Honor, any statement, I think the law says it has to be taken within the context. So your idea here is that the context is if you're snitching in this particular society, you're unwelcome and therefore subject to you. It's customary that a snitch would be eliminated or removed in order for the gang to continue. And so if you're advertising that or saying in a Facebook post, this guy is a snitch and he's just getting away with it, in that context it could be a threat. That's exactly right, Your Honor. Wait, I'm sorry. But if a defendant says as a general statement that people who snitch are unwelcome in society and might be subjected to harm by other parties, is that enough to say that the person who made that statement has himself threatened bodily harm? If a defendant says that a snitch or someone who talks should be harmed, I think that's enough of a threat to say that that threatens bodily harm. In this case, he's threatening James—I mean, he admitted in 2015 that he was— I mean, if the statement were, well, I'm not going to do anything, but I think people in general should go after snitches, that obviously would not be a threat of bodily harm, right? He's saying he's not doing anything. No, if he steps back— So it has to be that the speaker is the one who's threatening bodily harm, doesn't it? Yes, but Your Honor, it's also important to remember that John Ford is an associate of a gang that is working together to threaten bodily harm. James Harris was shot a week or so later. He was shot by GSC members. Yeah, but the district court didn't make a finding. So I agree. Like the statute also says that if you engage in conduct and thereby cause this bodily injury to another person, you're also violent. But the district court didn't make a finding that the actual injury that he later suffered resulted from this Facebook post, right? So the argument that this violates the statute is that he threatened bodily harm, right? And it's a separate issue as to whether his associates are going to go after the person. The question is whether this statement itself is a threat. That's correct. And in the context of this case, his prior statements, his gun postings, his incitements of violence, pointing out that James Harris was just there and no one was just picking at him was enough for the district court to find by Pro Bono and some of the evidence that that was a threat to cause bodily harm. Does it matter because it's grouped with the other obstruction charge? No, it also does not matter at all because the district court groups the two of them as a level 25 and then again explains in his sentencing that he would have applied the same sentence even had he covered the guidelines differently. Suppose he'd said, Harris is a snitch and, you know, he's getting aware of it. Can't somebody do something about this? That would be a little more direct, right? And your point is that that's really what, in substance, was happening. Yes, that's the way that the statement was interpreted. When you look at the postings of the people. I thought you agreed with me a moment ago that it has to be a threat by the speaker. So if you just said, can somebody do something about this, is the speaker really threatening bodily harm? It has to be a threat by the speaker to cause bodily harm. Yeah, a threat by the speaker, but who actually visits the harmed person might not be the speaker. Under United States feature, there has to be a threat to cause bodily harm. I don't think the case law says that the person who threatens to cause bodily harm necessarily has to be the person to harm the victim if he's working in concert with others, as the case law says. Can I ask about the RICO guidelines? Please. So the guidelines say, to set the base level offense level, you apply the greater of 19 or the offense level applicable to the underlying racketeering activity. And then it says to determine whether A1 or A2, that is the 19 or the offense level applicable to underlying racketeering activity, results in the greater offense level, you apply all of the provisions that govern adjustments to the base level to each subsection. How would it make sense to just make everything 19? I mean, isn't it asking you to do an inquiry as to whether the offense level applicable to underlying racketeering activity in itself will end up being greater or less than 19? I think the plain language of the guidelines, both in the guidelines itself and applications 1 and 3, directs that you first look at the underlying offense level for the underlying racketeering activity and you identify that for the level 19. As for why it makes sense, I mean, as we put it in our brief, I think it makes sense that if, for example, there is drug trafficking conducted on behalf of an enterprise involving racketeering activity, that's necessarily more serious and should be given a level 19 than if it were just conducted without that in that larger context. Why should it be given? Oh, you're saying just logically if it's part of racketeering activity, it should get a 19. But I'm asking why the text of the guidelines provision calls for that. It seems to say you should take the offense level applicable to underlying racketeering activity, do all the adjustments to that, and come up with a result and see if that is greater or less than 19, right? I think that the application note is right. It directs that you take the predicate activity for 19, the predicate racketeering activity for 19. But isn't that talking about the overall determination? So if the offense level for the underlying racketeering activity is less than the alternative minimum specified, the alternative minimum base level is to be used. So that means if you calculate the offense level applicable to the underlying racketeering activity and that itself doesn't all add up to 19, then you use a 19. But here it was above 19, right, because he had lots of different offenses, underlying offenses. The way that we probation in the court read it is that it was directed at the underlying group leaders. Before you get to the grouping, when you're talking about the underlying group leaders that were underlying racketeering activity, the application note is directed at that person on the initial stage. Now, if the court disagrees, I mean, we couldn't find any case law on that. We could certainly write on that. However, again, it doesn't change the overall guidelines here.  So it didn't matter that he got the extra half a point. I understand that argument. But actually, we've had this argument a lot now, that there are lots of different calculations that may or may not be wrong, but it didn't make a difference in terms of the technical calculation. So what about the argument that opposing counsel has raised, that if you just put all these arguments in front of the judge, that actually there was a higher offense level, maybe that was wrong, he violated the statutes, maybe that was wrong, there was maybe a breach of the agreement. I understand that you can't say that it affected the guidelines calculation, but might it not have affected what the district judge was thinking when he imposed a higher sentence? Your Honor, I think this is a district court who was meticulously careful in explaining his reasoning as to why he imposed the sentence. And when he got to the point of the sentencing, when he was explaining the Section 3553A factors, he went through all the factors that he was considering in his decision to depart 10 months over the guideline sentence. And those were the factors of the on-boarding of the site of violence, the fact that he was involved in a number of these attempted murder or aggravated assaults, the obstruction of justice, everything together. So I think this report here explains why he varied upwards both in his act for and in the judgment, and the reasons that he did so were appropriate. And I don't think, I think there's no guess as to what he was thinking. I guess that's what I'm trying to say. He explained exactly what he was thinking. All right. Thank you. Thank you, Your Honor. If there are no further questions, thank you very much. Okay, Mr. Urowicz, you have one minute and we're done. Thank you, Your Honor. I'll be brief. I'll try. The government argued that there was no plain error because, based on the district court sentence, that it would have imposed a sentence regardless of the guideline calculation. I think that argument is just a red herring. What would have slated the government is had the district court said it would have applied the same sentence regardless of the government's statement that this was premeditated murder because it concluded that on its own. The district court never said it would have said it. But the district court did apply the 27, right? Yeah, it did. Like in all the cases where we found a breach, I mean there are not that many of them, but in the cases where we found the breach of a plea agreement by the government, the district court applied the higher level. The other problem is because, based on the government's argument, which they now admitted was problematic, they took the position this was premeditated murder. That's what the district court relied on in imposing the offer of variance, and that was not permitted. If it had been brought to the district court's attention at the time, then the district court could have addressed it, right, and straightened the problem out. Had the breach, had defense lawyers said this is a breach to the district court, there's a problem here, couldn't the district court at that point have addressed the reason for the sentencing and brought it appropriate? This is going back to your earlier question before about plea sentences before a judge. This is what plain error is all about. Plain error is about when a party doesn't bring it to the attention of the court at the time, and we're sitting back months later trying to figure out what happened here. But, in fact, if it had been brought to the court's attention, then we wouldn't be doing plain error review. There probably wouldn't be any review because the district court would have straightened out, would have stated on the record exactly what he was doing. I agree with you. I wasn't counsel of the district court. I wouldn't have been there if I hadn't been an objection. The problem here is you know what this court has said about why resentencing before the judge is because the judge doesn't ring the bell. The government took a very definitive position before the district court that this was premeditated murder, and certainly, as I think the reactor pointed out, the question here is what was the reasonable expectation of Mr. Weston? He certainly went into the sentencing and qualified a lawyer and the government's agreement that this is going to be a level 27, it's not premeditated murder. And now for the government to take the opposite position, the complete opposite position at sentencing, I think is problematic. And when you consider the government says it will just respond to the court's inquiry, the government ignores the language of the agreement. I just ask the court to just focus on the language of the agreement at 860 and compare it with the language that was in Taylor 13 and the district court's preparatory comments that it was not going to apply 33 twice at 8127 and 8151. There was a breach here, and it's, you know, this court has recognized a little bit, and yes, since it's resentencing, it's, you know, under these circumstances, we're not calling for a new trial here, which is resentencing. It should be put before a new judge, and I think it would remedy the problem that was caused here. Thank you. Mr. Schoenhorn, you have one minute also. Thank you. I note two things. First of all, that the trial judge noted the seriousness of the obstruction of justices, even though he claimed they were pure of speech. The first one, posting that the newspaper article was not a threat, was considered intimidation, so he would not cooperate in the first place. In terms of the context, I would also refer to the amicus brief filed by the federal offender's office, in this case, of the culture of informants in the inner-city community. But the court also said that the N. Kuwait House Act property, which is also limited to speech, was a violent crime and categorically we know that it wasn't. Finally, he talks about the seriousness of the attempted murder, where my client could admit the involvement, there was no injury, no report, and the complainant never testified. So therefore, in terms of where the guidelines actually landed, as Judge Menasci pointed out, whether it was a half a point too low to change the number or not, we are still left with the fact that the judge gave an above-guideline sentence and had to take all those things that we claim are improper into that decision. Thank you very much for your time. Thank you. Thank you to all of you. We will reserve the decision. Have a good day.